IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KENT ALLEN SHORT, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:03-cv-680-F |
| | ) | WO |
| ALLSTATE CREDIT BUREAU, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Kent Allen Short and Melissa C. Short (hereinafter "Plaintiffs") bring this civil action challenging the alleged improper procurement and use of a consumer credit report. On June 27, 2003, Plaintiffs filed the Complaint in this action against the following defendants: Allstate Credit Bureau, Farm Services Agency, Phelan B. Savage, Jr., United States Department of Agriculture, and Ann M. Veneman as the Secretary of the United States Department of Agriculture. (Doc. # 1). By their Complaint, Plaintiffs allege violations of the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.*, numerous constitutional claims, and a state law invasion of privacy claim.

This action is presently before the court on the motion to dismiss filed by Defendant Allstate Credit Bureau on August 19, 2003. (Doc. # 9). Plaintiffs filed their response to the motion on September 11, 2003 and, on October 8, 2003, Defendant Allstate Credit Bureau filed its reply. (Docs. # 13 & 19). For the reasons that follow, the court concludes that the motion to dismiss is due to be GRANTED.

# I. FACTUAL BACKGROUND[1] AND PROCEDURAL HISTORY

This lawsuit stems from the inclusion of a non-applicant spouse's credit history on a consumer credit report for the applicant spouse. Plaintiffs Kent Allen Short and Melissa C. Short (hereinafter "Mr. Short" and "Mrs. Short" or collectively "Plaintiffs") are husband and wife.[2] (Compl. ¶ 2). Mr. Short is an agricultural farmer who operates a farm in Chilton County, Alabama. Defendant Allstate Credit Bureau (hereinafter "Allstate") is a "consumer reporting agency" within the meaning of 15 U.S.C. § 1681a(f).[3] Allstate prepares, sells and distributes "consumer reports" as defined in 15 U.S.C. § 1681a(d).[4]

---

[1] For purposes of considering the motion to dismiss, the court presumes that the allegations in the Complaint are true.

[2] Plaintiffs are Caucasian.

[3] "Consumer reporting agency" is defined as follows:

> [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

[4] "Consumer report" means the following:

> [A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for--
> (A) credit or insurance to be used primarily for personal, family, or household purposes;
> (B) employment purposes; or
> (C) any other purpose authorized under section 1681b of this title.

In June of 2001, Mr. Short applied for a farm loan with the Farm Services Agency (hereinafter "FSA").[5] Mr. Short submitted his loan application to Phelan B. Savage, Jr. (hereinafter "Savage"), a FSA Farm Loan Manager assigned to the Elmore/Montgomery County Office. In order to process the application, Savage contacted Mrs. Short and requested her social security number so that he could obtain her credit history. In response to Savage's request, Mrs. Short instructed him not to obtain her credit history.[6]

On July 9, 2001, despite the clear instructions of Mrs. Short, Savage obtained a consumer credit report from Allstate listing the credit history of Mrs. Short. Shortly thereafter, on July 16, 2001, Mrs. Short reiterated to Savage, by a written letter, her request not to have her credit history considered in relation to Mr. Short's loan application. Nonetheless, without regard to Mrs. Short's repeated requests and lacking her authorization, Savage considered Mrs. Short's credit history in determining Mr. Short's loan application. Consequently, Mr. Short's loan application was denied because of adverse information in Mrs. Short's credit history.

Dissatisfied with Savage's decision on Mr. Short's loan application, Plaintiffs filed this action on June 27, 2003. (Doc. # 1, Compl.). Plaintiffs allege claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*.; the Declaratory Judgment Act, 28 U.S.C.

---

15 U.S.C. § 1681a(d).

[5] According to the Complaint, Mr. Short applied for a FSA loan in an attempt to restructure his outstanding FSA loans.

[6] Apparently Mrs. Short provided Savage with her social security number.

§ 2201; the All Writs Act, 28 U.S.C. § 1651; the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq*.; the Fifth Amendment to the United States Constitution; and a state law claim of invasion of privacy. Plaintiffs seek compensatory and punitive damages, court costs, attorney's fees and declaratory relief. (*Id*.).

On August 19, 2003, Defendant Allstate[7] filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) arguing that all of the claims alleged by Plaintiffs are due to be dismissed. (Doc. # 7). As previously mentioned, this motion is fully briefed whereas Plaintiffs filed their response (Doc. # 13) and Allstate filed its reply (Doc. # 19).

## II. JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 15 U.S.C. § 1681, *et seq*. (Fair Credit Reporting Act). The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations supporting both.

## III. STANDARD OF REVIEW

A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. *See Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984); *see also Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir. 1986) ("[W]e may not ... [dismiss]

[7] In its motion, Allstate asserts that it was incorrectly identified in the Complaint and notes that it should be identified as Yonkers Credit Bureau, Inc., d/b/a/ Allstate Credit Bureau. According to the motion, Allstate is a division of Yonkers Credit Bureau, Inc., which is incorporated under the laws of the State of New York with is principal place of business in New York.

unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief.") (citation omitted). The court will accept as true all well-pleaded factual allegations and will view them in a light most favorable to the nonmoving party. *Hishon,* 467 U.S. at 73. Furthermore, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *See Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 703 (11th Cir. 1985).

## IV. DISCUSSION

### *A. Fair Credit Reporting Act Claims*

In the Complaint, Plaintiffs allege violations of the Fair Credit Report Act generally against all the defendants. Specifically, Plaintiffs allege claims of "willful noncompliance with 15 U.S.C. § 1681b(2) and § 1681b(3)" and "willful noncompliance with 15 U.S.C. § 1681d." (Compl. ¶¶ 16 & 19). According to the Complaint, these violations occurred when "Defendants sought a credit report that was not for the consumer applicant, but for a non-applicant that had given instructions not to be associated with the loan" and because "the procurement of a consumer report [ ] was not disclosed to the consumer applicant or the non-applicant." (*Id.*).

Congress enacted the Fair Credit Reporting Act (hereinafter "FCRA") in order to ensure "that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . ." 15 U.S.C. § 1681(b); *see also Yang v. Gov't Employees*

*Ins. Co.*, 146 F.3d 1320, 1322 (11th Cir. 1998) ("The FCRA seeks to promote the credit reporting industry's responsible dissemination of accurate and relevant information."). Sections 1681n and 1681o provide private rights of action for willful and negligent noncompliance with any duty imposed by the FCRA and allow recovery for actual damages and attorneys' fees and costs, as well as punitive damages in the case of willful noncompliance.

*1. Claims under § 1681b(2) and § 1681b(3)*

The provisions of § 1681b upon which Plaintiffs rely, namely subsections (2) and (3), address the permissible purposes for which consumer reports may be furnished.[8] Plaintiffs

---

[8] The relevant portions of §1681b provides:

Subject to subsection (c) of this section, any consumer reporting agency may furnish a consumer report under the following circumstances and no other:

***

(2) In accordance with the written instructions of the consumer to whom it relates.

(3) To a person which it has reason to believe--

(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or

***

(E) intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or

(F) otherwise has a legitimate business need for the information--

(i) in connection with a business transaction that is initiated by the consumer; or

(ii) to review an account to determine whether the consumer continues to meet the terms of the account.

argue that Allstate is liable for the inclusion of Mrs. Short's credit history on the credit report conveyed to Savage because the inclusion was impermissible under the FCRA. Allstate challenges Plaintiffs' argument and contends that the joint credit report was properly obtained because it was furnished with a permissible purpose. The Court proceeds by addressing these arguments.

Allstate's position is not without support. *See Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37 (D.C. Cir. 1984). In *Koropoulos,* the wife claimed that she was damaged when she applied for a department store credit card and was refused because of adverse information in her husband's credit history. Even though the court was unable to grant summary judgment due to a dispute of material facts, it reasoned that the credit report of a spouse could be properly obtained under 15 U.S.C. § 1681b(3)(A). Although the plain language of § 1681b(3)(A)–that a consumer report may be furnished in connection with a credit transaction involving the consumer on whom the information is to be furnished–seems to prohibit obtaining spousal credit reports, the court noted that the definition of "consumer report" is more liberal. Under the FCRA, a "consumer report" is "any . . . communication bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living. . . . ." 15 U.S.C. § 1681a(d). Thus, the court reasoned, a spouse's credit report could constitute an applicant's consumer report. Other courts have adopted this reasoning. *See Smith v. GSH Residential Real Estate Corp.,*

---

15 U.S.C.A. § 1681b(a)(2) & (3).

935 F.2d 1287, 1991 WL 106191 (4th Cir. 1991) (affirming district court's holding, which was based upon *Koropoulos,* where individual applied for a residential lease but the application was denied based on adverse information in the credit file of the applicant's separated spouse). This court finds no reason to reach a dissimilar conclusion.

Moreover, under § 1681b(3)(A), a creditor may request information on an applicant's spouse in a number of circumstances. Such situations which permit creditors to request spousal information include circumstances where the spouse will use the account or be contractually liable on the account, or where the applicant is relying on the spouse's income or acting as the spouse's agent. *See* 15 U.S.C. § 1681b(3)(A). In these instances, a consumer reporting agency is permitted to furnish the spousal information because a permissible purpose to obtain the information exists. Thus, in order to hold a consumer reporting agency liable for violation of § 1681b, there must be no permissible purpose for furnishing the spousal information to the creditor. *See generally id*.

In light of the reasoning elucidated in *Koropoulos* and *Smith*, and pursuant to § 1681b(3)(A), this court finds that the allegations in the Complaint fail to state a claim against Allstate for violation of § 1681b. As Allstate, a credit reporting agency, *may* properly furnish information on an applicant's spouse under § 1681b if a permissible purpose exists, the central question on deciding the motion to dismiss is whether Plaintiffs' allegations suffice to assert that no permissible purpose existed. Viewing the allegations of the Complaint most favorably to Plaintiffs, the court finds that the answer to that query is "No."

The allegations in the Complaint establish that Mrs. Short directed Savage not to

obtain her credit history and that, notwithstanding her direction, Savage obtained her credit history from Allstate. Given these factual allegations, Plaintiffs claim that no permissible purpose existed to obtain Mrs. Short's credit history. These allegations however fail to address either that Allstate knew of the facts concerning Mrs. Short's behest to Savage or any wilfulness in furnishing Mrs. Short's credit history to Savage. In other words, although Plaintiffs allege claims of "willful noncompliance" against all named defendants generally, they fail to allege any willful conduct on behalf of Allstate. Indeed, this factual deficiency is evidenced by the very presentment of Plaintiffs' § 1681b claims. (*See* Compl. at ¶ 16) ("Defendants are in willful noncompliance" because they "*sought* a credit report that was not for the consumer application, but for a non-applicant that had given instructions not to be associated with the loan.") (emphasis added). In this case, it is undisputed that Allstate did not *seek* any credit report, rather it *prepared* the contested credit report. Despite this material unrefuted fact, the Complaint is devoid of any allegations regarding Allstate's preparation of the credit report in dispute. Absent such allegations this court simply cannot hold Allstate liable under § 1681b. Therefore, even assuming that all of Plaintiffs' allegations are true, their § 1681b claims must be dismissed pursuant to Rule 12(b)(6).[9]

---

[9] The court pretermits discussion of Allstate's secondary argument regarding the willfulness of its conduct as that factual determination is not appropriate at this time. Allstate relies on matters outside the pleadings such as exhibits, which cannot be considered by the court in a 12(b)(6) motion. *See* Fed. R. Civ. P. 12(b); *also Trustmark Ins. Co., v. ESLU, Inc.*, 299 F.3d 1265, 1267 (11th Cir. 2002) ("Whenever a judge considers matters outside the pleadings in a 12(b)(6) motion, that motion is thereby converted into a Rule 56 Summary Judgment motion."). Consequently, the court will not consider these matters.

2. *Claims under § 1681d*

Plaintiffs also bring claims under § 1681d. Specifically, Mrs. Short alleges that "the Defendants are in willful noncompliance with [§ 1681d] for the procurement of a consumer report that was not disclosed to the consumer applicant or the non-applicant." (Compl. at ¶ 19). Section 1681d(a) provides:

> (a) A person may not procure or cause to be prepared an investigative consumer report on any consumer unless–
>
> (1) it is clearly and accurately disclosed to the consumer that an investigative consumer report including information as to his character, general reputation, personal characteristics, and mode of living, whichever are applicable, may be made, and such disclosure (A) is made in a writing mailed, or otherwise delivered, to the consumer, not later than three days after the date on which the report was first requested, and (B) includes a statement informing the consumer of his right to request the additional disclosures provided for under subsection (b) of this section and the written summary of the rights of the consumer prepared pursuant to section 1681g(c) of this title; and
>
> (2) the person certifies or has certified to the consumer reporting agency that–
>
> (A) the person has made the disclosures to the consumer required by paragraph (1); and
>
> (B) the person will comply with subsection (b) of this section.

15 U.S.C.A. § 1681d(a). Further, § 1681d(b) provides:

> (b) Disclosure on request of nature and scope of investigation
>
> Any person who procures or causes to be prepared an investigative consumer report on any consumer shall, upon written request made by the consumer within a reasonable period of time after the receipt by him of the disclosure required by subsection (a)(1) of this section, make a complete and accurate disclosure of the nature and scope of the investigation requested. This disclosure shall be made in a writing mailed, or otherwise delivered, to the consumer not later than five days after the date on which the request for such disclosure was received from the consumer or such report was first requested, whichever is the later.

15 U.S.C.A. § 1681d(b).

Assuming for the purposes of this motion that an investigative consumer report is at issue in this case, the plain language of the provision speaks for itself and Allstate is not subject to liability thereunder. There is no dispute that Allstate prepared the report at issue at the request of Savage at FSA. Such being the case, if there is any entity which could face liability under § 1681d(a) or (b) it is FSA, not Allstate. This is because § 1681d applies only to the party which requests preparation of the report, not the entity which prepared it. *See Ben-Hur v. Equifax Info. Servs, Inc.,* 976 F. Supp. 795, 805 (E.D. Wis. 1997) (citations omitted). Thus, to the extent that Plaintiffs seeks relief against Allstate under the provisions of 15 U.S.C. § 1681d(a) or (b) such effort must fail as a matter of law. Accordingly, the motion to dismiss is due to be granted on Plaintiffs' § 1681d claims.

*B. Declaratory Judgment Act Claims*

In the Complaint, Plaintiffs allege that "there exists a bona fide and justiciable, legal controversy between [them] and the Defendants, which should be settled and relief afforded as to any uncertainty and insecurity" pursuant to the Declaratory Judgment Act. (Compl. ¶¶ 22 & 23). The Declaratory Judgment Act, 28 U.S.C. § 2201, provides, in relevant part:

> (a) In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

"[T]he operation of the Declaratory Judgment Act is procedural only." *Household Bank v.*

*JFS Group,* 320 F.3d 1249, 1253 (11th Cir. 2003) (quoting *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227 (1937)). If there is an underlying ground for federal court jurisdiction, the Declaratory Judgment Act "allow[s] parties to precipitate suits that otherwise might need to wait for the declaratory relief defendant to bring a coercive action." *Gulf States Paper Corp. v. Ingram,* 811 F.2d 1464, 1467 (11th Cir. 1987).

Consistent with the "cases" and "controversies" requirement of Article III, the Declaratory Judgment Act specifically provides that a declaratory judgment may be issued only in the case of an "actual controversy." *See Emory v. Peeler,* 756 F.2d 1547, 1551-52 (11th Cir. 1985). Based on the facts alleged, there must be a substantial continuing controversy between two adverse parties. *Id.* at 1552. "The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury" *Id.* (internal quotations omitted).

As the Supreme Court has explained:

> The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Maryland Cas. Co. v. Pacific Oil Co.,* 312 U.S. 270, 273 (1941). Therefore, a threshold

question in an action for declaratory relief is whether a justiciable controversy exists. *Wendy's Int'l v. City of Birmingham,* 868 F.2d 433, 435 (11th Cir. 1989). At an irreducible minimum, the party who invokes the court's authority under Article III must show: (1) that he or she personally has suffered some actual or threatened injury as a result of the alleged conduct of the defendant; (2) that the injury fairly can be traced to the challenged action; and (3) that it is likely to be redressed by a favorable decision. *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.,* 454 U.S. 464, 472 (1982).

Taking the allegations asserted in the Complaint as true, the Court finds that Plaintiffs have not sufficiently alleged a claim upon which it may grant declaratory relief. The essence of Plaintiffs' "controversy" with Allstate arises from the inclusion of Mrs. Short's credit history on the credit report submitted to Savage. Although Mrs. Short asserts that she specifically directed Savage not to consider her credit history in assessing Mr. Short's FSA loan application, she does not assert– nor is it alleged in the Complaint– that she gave such direction to Allstate. Indeed, there are no allegations in the Complaint that Allstate was aware of Mrs. Short's request to omit her credit history nor that she notified Allstate of Savage's lack of authority to receive her credit history. Plaintiffs' allegations thus are insufficient to state a claim because there is no actual controversy between the present parties. Although the parties have differing opinions regarding whether Savage should have been able to receive Mrs. Short's credit history, a mere difference of opinion about the state of the law does not create an actual legal controversy that the Court can adjudicate. *See Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 241(1937) (a controversy that can be

adjudicated by the Declaratory Judgment Act "must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.").

Moreover, Plaintiffs allege in the Complaint, that Savage "against the expressed instructions of the Plaintiffs and without informing Plaintiffs of his actions, obtained a credit report" from Allstate. (Compl. at ¶ 11). There are no allegations that Allstate inappropriately conveyed the report to Savage. Hence, based upon the allegations of the Complaint– which the court accepts as true– and viewing them in the light most favorable to Plaintiffs, if Allstate inappropriately furnished Mrs. Short's credit history to Savage, Plaintiffs may have a conflict, perhaps with Savage, but not with Allstate. As such, retaining Allstate in this case would necessarily entail engaging it in a controversy of which it has no adverse legal interests. Such a position is contrary to the principles of the Declaratory Judgment Law. *See Brown & Root, Inc. v. Big Rock Corp.,* 383 F.2d 662, 665 (5th Cir. 1967)[10] (citing *Aetna Life Ins. Co.,* 300 U.S. at 240-41) ("The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests."). Accordingly, because there is no live controversy between Plaintiffs and Allstate, Plaintiffs have failed to state a claim for which relief may be granted. Allstate's motion to dismiss is due to be granted on this claim.

---

[10] In *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.

*C. All Writs Act Claims*

In the Complaint, Plaintiffs alternatively seek "relief as may be appropriate under the 'All Writs Act.'" (Compl. ¶ 36). The All Writs Act provides in pertinent part:

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

28 U.S.C. § 1651. "The purpose of the power codified in that statute is to allow courts to protect the jurisdiction they already have, derived from some other source. It gives a residual source of authority to issue writs that are not otherwise covered by statute and is an extraordinary remedy that ... is essentially equitable and, as such, not generally available to provide alternatives to other, adequate remedies at law." *Schiavo ex rel. Schindler v. Schiavo ex rel. Schiavo,* 2005 WL 648897, *4 (11th Cir. Mar. 23, 2005) (internal quotes and citations omitted). "Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Pennsylvania Bureau of Corr. v. U.S. Marshals Service*, 474 U.S. 34, 43 (1985). Moreover, "a plaintiff cannot sue invoking only the court's All Writs power." *Henson v. Ciba-Geigy Corp.* 261 F.3d 1065, 1070 (11th Cir. 2001) (citing *Clinton v. Goldsmith,* 526 U.S. 529 (1999)). Accordingly, as the FCRA addresses the specific issues alleged in the Complaint, the Court finds that Plaintiffs' claims do not fall within the purview of the All Writs Act.[11] Thus, Plaintiffs' claims or requests for

---

[11] Indeed, Plaintiffs appear to concede this issue in their response to the motion to dismiss and thus strive to persuade this court to hold Allstate liable under an apparent theory of vicarious liability. (Doc. # 13 at p. 9) ("While the FCRA, Equal Credit Opportunity, Fifth Amendment, and other authorities that were mentioned in the complaint affect certain defendants, other defendants

relief based upon the All Writs Act are due to be dismissed and Allstate's motion to dismiss is due to be granted on these claims.

*D. Equal Credit Opportunity Act Claims*

In the Complaint, Plaintiffs allege that "[Mr. Short] has unlawfully been racially discriminated against by the Defendants, pursuant to the [Equal Credit Opportunity Act ]" and seek relief under that Act. (Compl. ¶¶ 25 & 26). The Equal Credit Opportunity Act (hereinafter "ECOA"), 15 U.S.C. § 1691*, et seq.*, was designed to prevent discrimination in lending. Section 1691(a)(1) makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction--(1) on the basis of race, color, religion, national, origin, sex or marital status, or age (provided the applicant has the capacity to contract)." 15 U.S.C. § 1691(a)(1). The primary goal of Congress in enacting § 1691, part of the ECOA Amendments of 1976, was to provide citizens legal redress for the discriminatory activities of creditors. Section 1691a(e) defines a creditor for purposes of the ECOA as:

> any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit.

15 U.S.C. § 1691a(e).

Plaintiffs' Complaint states that Allstate is a "credit reporting agency." (Compl. at ¶

---

should be held responsible for their actions that affected the lives of the Plaintiffs.").

6). Plaintiffs do not allege that Allstate is a lending institution nor the institution from which they sought credit. Absent any allegations that Allstate appears to be "a person who regularly extends, renews, or continues credit," or an entity that "regularly arranges for" such credit, this Court cannot hold that Allstate is subject to liability under the ECOA. Moreover, accepting the allegations in the Complaint as true, Plaintiffs fail to allege that Allstate participated in any creditor decisions which affected Plaintiffs. Plaintiffs were allegedly denied credit by FSA, not Allstate. Accordingly, based upon the allegations in the Complaint, Allstate does not constitute a "creditor" for the purposes of the ECOA and thus as a matter of law is not subject to liability. In other words, Plaintiffs have failed to state a claim under the ECOA against Allstate. The motion to dismiss is due to be granted for this claim.

*E. Fifth Amendment Claims*

In the Complaint, Plaintiffs allege that they were "unlawfully deprived of [their] rights to equal protection of the laws under the Fifth Amendment of the United States Constitution based on discrimination because of [their] race" and seek relief "pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)." (Compl. ¶¶ 28, 30, 32 & 34).

In *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971), the Supreme Court recognized an implied cause of action under the Constitution against federal employees for violation of constitutional rights. In light of *Bivens* and its progeny, the court simply cannot square Plaintiffs' claims against Allstate with any possible *Bivens* action. In this case,

Plaintiffs do not allege any claims against any individual employees of Allstate. Of most importance, however, there is no allegation in the Complaint that Allstate, in relation to this cause of action, acted under color of federal authority nor in the capacity of a federal agent in connection to any of the alleged actions. Simply put, there are no allegations in the Complaint which support a *Bivens* action nor Fifth Amendment violation against Allstate. As a result, even assuming that all of Plaintiffs' allegations are true, their Fifth Amendment claims against Allstate are due to be dismissed.

*F. Invasion of Privacy Claims*

In the Complaint, Plaintiffs allege that " the Defendants have unlawfully invaded [the] privacy" of Mrs. Short "as to the appropriation of her financial history for a commercial purpose." (Compl. ¶ 38). Allstate contends that Plaintiffs' invasion of privacy claims is due to be dismissed because it is barred by the qualified immunity of the FCRA.

The FCRA provides qualified immunity for consumer reporting agencies for claims in the nature of defamation, invasion of privacy, and negligence, unless the consumer shows that the information was furnished with "malice or willful intent to injure." *See* 15 U.S.C. § 1681h(e).[12] *See also Thornton v. Equifax, Inc.,* 619 F.2d 700 (8th Cir. 1980); *generally Parker v. Parker,* 124 F. Supp. 2d 1216, 1226-1227 (M.D. Ala. 2000). In the instant case,

---

[12] FCRA § 1681h(e) provides as follows:

Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency ... except as to false information furnished with malice or willful intent to injure such consumer.

Plaintiffs fail to allege facts which indicate that Allstate acted "with malice or willful intent to injure" them. The allegations in the Complaint merely establish that Savage received Mrs. Short's credit history from Allstate. There are no allegations concerning Allstate's intent to injure Plaintiffs nor its knowledge of Plaintiffs' instructions to Savage regarding the inclusion of Mrs. Short's credit history on the credit report. Moreover, in their response to the motion to dismiss, Plaintiffs assert that Allstate "freely gave out the financial matters that dealt specifically and solely with Ms. Short." (Doc. # 13, p. 10). This argument bolsters the notion that no malice or willful intent to injure Plaintiffs existed as Allstate simply provided the credit information Savage requested. Accordingly, the alleged facts as set forth in the Complaint are insufficient to support an inference or conclusion that Allstate intended to injure Mrs. Short or Mr. Short. Because there is no allegation that Allstate maliciously or willfully furnished the credit information to Savage with the intent to injure Plaintiffs, the invasion of privacy claim is barred by the qualified immunity of FCRA and is subject to dismissal.

## V. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the motion to dismiss (Doc. # 9) is GRANTED. Defendant Allstate Credit Bureau is hereby DISMISSED from the above-styled action.

DONE this 23rd day of May, 2005.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE